
FILED
2013 Mar-11  PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| TERRY WILSON; CECIL GORDON; LORETTA WIGGINS; MICHAEL RICHARDS; and EDDIE WILLIAMS | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Jury Demand |
| vs. | ) ) ) | Civil Action No. |
| PARTLOW DEVELOPMENTAL CENTER; ALABAMA DEPARTMENT OF MENTAL HEALTH; REBECCA BELLAH, in her individual capacity and as Facility Director and the Appointing Authority at Partlow Developmental Facility, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

1.      This action is brought pursuant to Title VII of the 1964 Civil Rights Act, as amended, the Equal Protection Clause of the Fourteen Amendment to the United States Constitution, and 42 U.S.C. §§ 1983 and 1988.

2.      Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

## PARTIES

3.     Plaintiff, Terry J. Wilson (hereinafter "Wilson" or "Plaintiff Wilson"), is an African American male citizen of the United States and of the State of Alabama.  At all times material to this Complaint, Plaintiff Wilson was a resident of this Judicial District and Division.

4.     Plaintiff Cecil R. Gordon (hereinafter "Gordon" or "Plaintiff Gordon"), is an African American male citizen of the United States and of the State of Alabama.  At all times material to this Complaint, Plaintiff Gordon was a resident of this Judicial District and Division.

5.     Plaintiff Loretta Wiggins (hereinafter "Wiggins" or "Plaintiff Wiggins"), is an African American female citizen of the United States and of the State of Alabama.  At all times material to this Complaint, Plaintiff Wiggins was a resident of this Judicial District and Division.

6.     Plaintiff Michael Richards (hereinafter "Richards" or "Plaintiff Richards"), is an African American male citizen of the United States and of the State of Alabama.  At all times material to this Complaint, Plaintiff Richards was a resident of this Judicial District and Division.

7.     Plaintiff Eddie W. Williams (hereinafter "Williams" or "Plaintiff Williams"), is an African American male citizen of the United States and of the

State of Alabama.   At all times material to this Complaint, Plaintiff Williams was a resident of this Judicial District and Division.

8.     Defendant Partlow Developmental Facility (hereinafter "Partlow") and Defendant Alabama Department of Mental Health (hereinafter "ADOMH") were the employers of the Plaintiffs.   Defendant Rebecca Bellah (hereinafter "Bellah") is an administrator at Partlow and was the supervisor of the Plaintiffs. Partlow, ADOMH, and Bellah (collectively "Defendants") separately and severally, at various times as more specifically described below have discriminated and retaliated against Plaintiffs on the basis of their race and because they have exercised federally protected rights by opposing said discrimination all in violation of Title VII of the 1964 Civil Rights Act, as amended ("Title VII").   ADOMH employs more than 500 employees and is an "employer" within the meaning of Title VII.   The Defendants are located in and doing business within this Judicial District and Division.

9.     All the discriminatory employment practices alleged herein were committed within the State of Alabama.   This action is brought within the state where the unlawful employment practices were committed, making venue proper under 42 U.S.C. § 2000e, *et seq*.

10.   In 2011, Plaintiffs timely filed charges of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission (hereinafter

"EEOC"), Birmingham District Office.  These charges were filed within 180 days of the dates of adverse employment decisions that affected Plaintiffs' terms and conditions of employment.    On or around June 5, 2012, the EEOC issued Determinations and Invitations to Conciliate.  On or around July 9, 2012, EEOC sent the cases on to the U.S. Department of Justice (hereinafter "DOJ") due to unsuccessful efforts to conciliate.  Within its July letters, the EEOC wrote in one such letter, "If the DOJ decides not to bring suit, you will be informed and receive a Notice of Right to Sue which entitles you to sue the respondent within 90 days of the its receipt."   Terry Wilson EEOC Letter attached hereto as Exhibit "A."  The DOJ issued to the Plaintiffs Notice of Right to Sue letters on or around December 6, 2012.   Plaintiff Wiggins was the first Plaintiff to receive a Right to Sue Letter. Plaintiff Wiggins's letter was received on December 10, 2012.  On dates thereafter, the remaining plaintiffs signed for and received their letters. This suit is filed within ninety (90) days of the date of the receipt of these Notices of Right to Sue.

## FACTS

11.    Wilson, Wiggins, Williams, Gordon, and Richards were employed at. Partlow Developmental Center in Tuscaloosa, Alabama as a Mental Health Worker I, Mental Health Worker III, Mental Health Worker II, Mental Health Worker I, and Mental Health Security Officer I, respectively.  Wilson had been employed by

ADMH for more than 35 years, Wiggins more than 9 years, Williams more than 28 years, Gordon more than 24 years, and Richards more than 4 years.

12.    On or around October 11, 2010, a notably violent and aggressive patient[1] of Partlow weighing more than 300 pounds, "RW,[2]" began to throw food at and to harass another patient, "RA."   One ore more of the Plaintiffs including Wilson was successful in diverting RA away from the table.   At that point, however, RW began to throw food and a phone at other Partlow employees and threatened to run away from the facility.

13.    Next, RW left the dining area and was followed by Wilson, Wiggins, Williams, and Richards.  RW then came in contact with another Partlow patient, "TB", wherein RW and TB entered into a verbal altercation, after which RW punched TB.

14.    Accordingly, Wilson, Wiggins, Williams, and Richards restrained RW y placing RW on the floor in a prone position.  Physically, Wilson held RW's right leg, Williams held his right arm, Richards held his left arm, and Wiggins held his left leg.  Shortly thereafter,  Gordon relieved Wiggins so that she could call a supervisor for assistance.

15.    During the time period of RW's restraint, 4:58 p.m. until 5:02 p.m., RW continued to attempt to punch and kick the Plaintiffs which, in effect, caused

---

[1] The patient, RW, was known by the Plaintiffs to have killed another Partlow patient and to have been violent with other Partlow employees.
[2] Patient initials are used to protect confidentiality.

the Plaintiffs to feel it unsafe to roll RW onto his back until further assistance arrived.    When John Gordon (hereinafter "J. Gordon") arrived to assist the Plaintiffs, it was discovered that RW was non-responsive.  Medical personal were called to the scene and upon arrival, RW was pronounced dead.

16.    On or around February 11, 2011, the Plaintiffs were terminated from their jobs by the Defendants.  Defendants based the Plaintiffs' terminations on violations of the following ADOMH Rules and Policies:

(1)  ADMOH Policy 19-10- Abuse, Neglect, Mistreatment and Exploitation;

(2) ADMOH Incident Management Plan; and,

(3) ADMOH 70-05- Employee Conduct and Accountability.

Specifically, the Defendants charged the Plaintiffs with violating these policies by restraining RW in the prone position on October 11, 2010.

17.    The Crisis Prevention and Intervention ("CPI") Manual, by which all of the Plaintiffs were trained, detailed the dangers of holding a patient or individual in the prone position, but did not forbid placing an individual or patient in the prone position.  In fact,  the Plaintiffs assert that the prone position of restraint was commonly used at Partlow on other patients and by other Caucasian employees.

18.    In an Order by the Alabama State Personnel Board (the "Board"), the authority by which Plaintiffs appealed their termination, one of fifteen witnesses

who testified before the Board, Tammy Carroll ("Carroll"), also a Partlow employee, affirmed under oath that she has "personal knowledge of other patients being held in a prone position by other employees whose employment was not terminated." Order attached hereto as Exhibit "B." Further the Order stated that, "it was [Carroll's] opinion that holding a patient in the prone position was not a terminable offense, and she has *never* known of any employee who has been terminated for placing a patient in the prone position." Order at p. 14. (Emphasis added.) The Order went on to say, "Carroll testified that at the time of this incident, there was no Departmental policy prohibiting the use of the prone position as a physical restraint technique." Order at p. 14. In concluding that the facts did not warrant the dismissal of the Plaintiffs, the Board stated that "the Department has failed to prove that the physical restraint technique used by the [Plaintiffs] was 'contrary to approved physical restraint techniques.' In fact the evidence was that the prone position was a common technique used by staff and that no staff member had ever been disciplined for using such a technique." Order at p. 31-32.

19.    Similarly situated Caucasian Partlow and/or ADOMH employees, including, but not limited to, Chris Avery and Chuck Gills were allowed to maintain their positions of employment without threat of disciplinary action after restraining Partlow patients in the prone position.

20.    The majority of the Plaintiffs' employee evaluations while employed at Partlow and/or ADOMH were categorized as "Exceeds Standards."  Order at p. 23-28.  In fact, in 2003, Wilson received a Letter of Commendation for "quickly and correctly applying the Heimlich maneuver" and also received an "Outstanding Services Award" for saving a Partlow patient's life.  Order at p. 24.

21.    Within 10 days of Plaintiffs' termination, Plaintiffs filed an appeal before the Alabama Personnel Board.  In a February 15, 2012, Order by the Board, it ordered that the Plaintiffs be reinstated to their positions with Partlow and/or ADOMH "with back pay, to be offset by any interim earnings, including unemployment compensation, if any."  February 15, 2012, Order attached hereto as Exhibit "C".

22.    On or around June 5, 2012, the EEOC issued its Determination letters regarding the Plaintiffs' charges of discrimination finding reasonable cause to conclude that the Plaintiffs' had been discriminated against on the basis of their race.  One such letter to Plaintiff Wilson stated, "The evidence indicates that others outside of the Charging Party's protected group have also used the unauthorized method of restraint without incident or punishment.  The evidence indicates that others outside of the Charting Party's protected group have had internal investigations conducted which indicated that they had been negligent or abusive in the carrying out of their duties, yet they were not punished in the same manner

8

as the Charging Party.   The evidence further shows that the only employees discharged for abuse or neglect are Black.   Based on this analysis, I have determined that the evidence obtained during the investigation establishes that there is reasonable cause to conclude that the Charging Party was discriminated against because of his race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended."   Wilson Determination Letter attached hereto as Exhibit "D."

23.   Defendants' conduct appears motivated by race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. as amended, the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. §1983.   Accordingly, Plaintiffs filed Charges of Discrimination with the EEOC within 180 days of the date of the adverse employment decision(s).

24.   Plaintiffs have not been treated in the same manor as similarly situation Caucasian Partlow and/or ADOMH employees.   Upon information and belief, the dissimilar manner in which Plaintiffs have been treated is a direct result of race discrimination a in violation of Title VII of the Civil Rights Act of 1964. as amended, the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. §1983.

## CLAIM I
### (Title VII of the 1964 Civil Rights Act, as Amended)

25.   Plaintiff incorporates paragraphs 1 – 24 of this Complaint as if set forth fully herein.

26.   This claim is brought against Partlow and ADOMH only.

27.   Defendants have discriminated against Plaintiffs on the basis of race in violation of Title VII.

28.   As a direct and proximate result of Partlow and ADOMH's conduct, Plaintiffs have suffered, lost wages and benefits, mental anguish, emotional distress, and other damages due to Defendants' acts, as set forth above. Defendants' acts were intentional and/or taken with reckless indifference to Plaintiffs' federally protected rights, thus entitling Plaintiffs to an award of non-pecuniary damages.

## CLAIM II
### (VIOLATION OF THE UNITED STATES CONSTITUTION)

29.   Plaintiff incorporates paragraphs 1 - 28 of this Complaint as though set-forth fully herein.

30.   This claim is brought against Defendant Bellah in her individual and official capacities as a Partlow and/or ADOMH director.

31.   Defendant, while acting under color of state law, discriminated against Plaintiffs on the basis of race in violation of the Equal Protection clause of

the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C.§§ 1983 and 1988.

32.     As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered lost wages and benefits, mental anguish, emotional distress, and other damages.

33.     The Defendant's acts, as set forth above, were intentional and/or were taken with reckless indifference to Plaintiffs' federally protected rights, thus entitling Plaintiffs to an award of punitive damages against those parties sued in their individual capacities.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiffs respectfully request that this Court grant the following relief:

(a)     Grant the Plaintiffs  a declaratory judgment that the practices complained of herein are violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and Title VII of the 1964 Civil Rights Act, as amended;

(b)     Grant the Plaintiffs an Order enjoining Defendants and all persons acting in concert with Defendants from engaging in discriminatory practices on the basis of race;

(c)   Grant the Plaintiffs the appropriate amount of back pay, loss of employment benefits, and other damages for the unlawful and discriminatory practices of the Defendants, or in the alternative, front pay;

(d)   Grant the Plaintiffs an award of compensatory and/or punitive damages to make them whole;

(e)   Enjoin Defendants from retaliating against Plaintiffs based upon their race or because they exercised their federally protected rights;

(f)   Award the Plaintiffs their costs and expenses, including a reasonable attorney's fee; and,

(g)   Award such other and further relief as may be permitted by statute or as may be just and proper.


Respectfully submitted,


Hannah C. Thompson (ASB-4219-A63T)
Attorney for the Plaintiff



OF COUNSEL

Andrew C. Allen
Hannah C. Thompson
**White Arnold & Dowd P.C.**
2025 Third Avenue North, Suite 500
Birmingham, Alabama 35203

(205) 323-1888
(205) 323-8907 (fax)
aallen@whitearnolddowd.com
hthompson@whitearnolddowd.com

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY**.

Hannah C. Thompson

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**

**Alabama Department of Mental Health**
**100 North Union Street**
**Montgomery, AL 36130**

**Partlow Developmental Center**
**c/o Alabama Department of Mental Health**
**100 North Union Street**
**Montgomery, AL 36130**

**Rebecca Bellah**
**1637 Lakewood Drive**
**Vestavia, AL 35216-1625**